FUSIBLES WESTINGHOUSE DE PUERTO RICO, INC., Petitioner,

v.

OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION and Raymond J. Donovan, Secretary of Labor, Respondents.

No. 80–1724.

United States Court of Appeals, First Circuit.

Argued May 6, 1981.

Decided Sept. 9, 1981.

Pedro Pumarada, San Juan, P.R., with whom Jay A. Garcia-Gregory and Fiddler, Gonzalez & Rodriguez, San Juan, P.R., were on brief for petitioner.

James E. Culp, Atty., U. S. Dept. of Labor, Washington, D. C., with whom T. Timothy Ryan, Jr., Sol. of Labor, Washington, D. C., Mary Z. Asseo, Associate Regional Sol., Hato Rey, P.R., Benjamin W. Mintz, Associate Sol. for Occupational Safety and Health, Allen H. Feldman, Counsel for Appellate Litigation, and John A. Bryson, Asst. Counsel for Appellate Litigation, Washington, D. C., were on brief, for The Secretary of Labor.

Before GIBSON,* Senior Circuit Judge, CAMPBELL and BOWNES, Circuit Judges.

BOWNES, Circuit Judge.

Appellant Fusibles Westinghouse De Puerto Rico, Inc. (Fusibles) seeks review of the decision of the Occupational Safety and Health Review Commission that it violated the Secretary of Labor's regulation for spray finishing processes using flammable and combustible materials. We affirm the Commission's determination.

* Of the Eighth Circuit, sitting by designation.

1. The pertinent statutory language provides:
(c) Any employer who has received a citation for a violation of the requirements of section 654 of this title, of any standard, rule, or order promulgated pursuant to section 655 of this title, or of regulations prescribed pursuant to this chapter, and such violation is specifically determined not to be of a serious nature, may be assessed a civil penalty of up to $1,000 for each such violation.
29 U.S.C. § 666(c).

The facts of this case are for the most part undisputed. Two of the electrical fuses manufactured by Fusibles in its plant in Luquillo, Puerto Rico, are spray painted in a prefabricated dry-type spray booth. The booth is located outside the manufacturing building in an L-shaped corner of the west wall. It is three-sided. A 20-foot-long roof extends over its top; its open side is 7 feet high and 5 feet wide, and it is 4 feet deep with an overall depth of 6 feet 8 inches. An exhaust protrudes through the top of the overhanging roof. The booth contains a small machine with a device powered by an electrically-driven sprocket and chain, which could yield enough heat to serve as an ignition source for flammable vapor. The machine and device rotate the three-foot long Burndy fuses so they can be painted. The paint mixture consists of one-third paint and one-third each of toluene and cellulose—both flammable substances.

In the period between March 10—May 4, 1978, the Secretary of Labor's compliance officer inspected Fusibles and found a number of deficiencies in its operations. As a consequence, the Secretary cited Fusibles, charging among other things, five nonserious violations[1] of the standard for spray finishing using flammable and combustible substances. 29 C.F.R. § 1910.107 et seq. The citation stated in relevant part that the spray booth was not protected with approved automatic sprinklers, in contravention of 29 C.F.R. § 1910.107(b)(5)(iv);[2] that the glass panels used for illumination of the booth were not protected to prevent breakage, in violation of 29 C.F.R. § 1910.107(b)(10);[3] that open or "glass" containers

2. 29 C.F.R. § 1910.107(b)(5)(iv) states:
(iv) Space within the spray booth on the downstream and upstream sides of filters shall be protected with approved automatic sprinklers.

3. 29 C.F.R. § 1910.107(b)(10) provides:
(10) Illumination. When spraying areas are illuminated through glass panels or other transparent materials, only fixed lighting units shall be used as a source of illumination. Panels shall effectively isolate the spraying area from the area in which the

were used for bringing flammable or combustible liquids into spray finishing rooms, in violation of 29 C.F.R. § 1910.107(e)(3);[4] that spray nozzles and auxiliary equipment using solvents during the spraying operation were not cleaned inside the spray booth, in violation of 29 C.F.R. § 1910.-107(g)(5);[5] and that adequate ventilation in the booth was lacking and no means were taken to insure proper ventilation, in violation of 29 C.F.R. § 1910.107(b)(5)(i).[6]

The Occupational Safety and Health Review Commission judge affirmed the Secretary's findings. No penalty was assessed. Fusibles presented no evidence to rebut the Secretary's assertions of fact and the judge accepted them as true. He also rejected Fusibles' two legal defenses: (1) that its operations were excluded from the scope of 29 C.F.R. § 1910.107 because the spray booth was located outside the building, and (2) that the Secretary failed to establish, as required by 29 C.F.R. § 1910.10(a)(2), that the company's operations produced dangerous quantities of fumes. Fusibles filed a Petition for Discretionary Review and supporting brief. When no Commission member directed a review, the petition was automatically denied making the decision a final order. Appellant seeks review here of that final order.

■ Appellant's exclusion argument is based on the "outdoor" exemption contained in 29 C.F.R. § 1910.107(n), which defines the scope of the regulation. Section 1910.107(n) provides:

(n) *Scope.* This section applies to flammable and combustible finishing materials when applied as a spray by compressed air, "airless" or "hydraulic atomization," steam, electrostatic methods, or by any other means in continuous or intermittent processes. The section also covers the application of combustible powders by powder spray guns, electrostatic powder spray guns, fluidized beds, or electrostatic fluidized beds. The section does not apply to outdoor spray application of buildings, tanks, or other similar structures, nor to small portable spraying apparatus not used repeatedly in the same location.

The exemption does not include all outdoor operations, but refers to outdoor spray finishing operations involving an application to the surfaces of large structures. This would not be a continuous process. Fusibles' process is ongoing, using combustible materials applied as a spray, and falls within the operations described in the first sen-

lighting unit is located, and shall be of a noncombustible material of such a nature or so protected that breakage will be unlikely. Panels shall be so arranged that normal accumulations of residue on the exposed surface of the panel will not be raised to a dangerous temperature by radiation or conduction from the source of illumination.

4.  29 C.F.R. § 1910.107(e)(3) states:

(3) *Containers.* Original closed containers, approved portable tanks, approved safety cans or a properly arranged system of piping shall be used for bringing flammable or combustible liquids into spray finishing room. Open or glass containers shall not be used.

5.  29 C.F.R. § 1910.107(g)(5) states:

(5) *Cleaning solvents.* The use of solvents for cleaning operations shall be restricted to those having flashpoints not less than 100° F.; however, for cleaning spray nozzles and auxiliary equipment, solvents having flashpoints not less than those normally used in spray operations may be used. Such cleaning shall be conducted inside spray booths

and ventilating equipment operated during cleaning.

6.  29 C.F.R. § 1910.107(b)(5)(i) provides in pertinent part:

(5) *Dry type overspray collectors—(exhaust air filters).* In conventional dry type spray booths, overspray dry filters or filter rolls if installed, shall conform to the following:

(i) The spraying operations except electrostatic spraying operations shall be so designed, installed and maintained that the average air velocity over the open face of the booth (or booth cross section during spraying operations) shall not be less than 100 linear feet per minute. Electrostatic spraying operations may be conducted with an air velocity over the open face of the booth of not less than 60 linear feet per minute, or more, depending on the volume of the finishing material being applied and its flammability and explosion characteristics. Visible gauges or audible alarm or pressure activated devices shall be installed to indicate or insure that the required air velocity is maintained.

tence. That the exemption does not encompass all outdoor operations is supported by the exemption of small portable apparatus "not used repeatedly in the same location." This means that such apparatus would be covered if used repeatedly in the same outdoor location. The critical distinction between the included and exempted processes is not physical location—inside or outside—but whether there is a possibility that combustible fumes will accumulate due to the frequency of use in a particular location. An outdoor booth with one open side does not render the requirements of the regulations unnecessary because, as the administrative law judge observed, it may still have dead air trapped within it.

█ We turn next to Fusibles' contention that it did not violate the regulation because the Secretary failed to prove that dangerous quantities of vapors were produced by its spray painting operation. In pressing this view, appellant relies on § 1910.107(a)(2), which provides:

> (2) *Spraying area.* Any area in which dangerous quantities of flammable vapors or mists, or combustible residues, dusts, or deposits are present due to the operation of spraying processes.

The term "dangerous quantities," it argues, implies that flammable vapors may appear in other quantities which are not dangerous. We observe first that the applicable regulations with respect to four of the five non-serious violations do not use the words "spraying area" and hence arguably do not involve an interpretation of the term "dangerous quantities." We further point out that the Commission noted the absence of the term "spraying area" in regulation 29 C.F.R. § 1910.94(c)(2) [7] in reversing an earlier decision, *Bethlehem Fabricators, Inc.,* [1976–77] OSHD (CCH) § 20,782 (Rev. Comm'n 1976), holding that the Secretary must prove that "dangerous quantities" of emissions were produced by spray painting activities in order to show a violation of § 1910.94(c)(2). *See Westinghouse Electric Corporation,* [1979] OSHD (CCH) § 23,542 at 28,519 & n.6 (Rev.Comm'n 1979), *vacated on other grounds,* 617 F.2d 497 (7th Cir. 1980). This would seem to indicate that the definition of "spraying area" is not applicable to provisions not using the term.

The glass panel violation, 29 C.F.R. § 1910.107(b)(10), however, does refer to "spraying area," and we therefore must delve into the meaning of "dangerous quantities." In so doing we look for aid to the national consensus standard from which it is derived, NFPA No. 33–1969 (National Fire Protection Association), Standard for Spraying Finishing Using Flammable and Combustible Materials. That standard provides that the spraying area include the interior of the spray booth, the exhaust duct, and any area in the direct path of spray and any area containing dangerous quantities of air-suspended combustible residue, dust, deposits, vapors, or mists as a result of spraying operation.[8] Such areas can thus be said to be presumed to have dangerous quantities of mists, vapors or residues. In the case at hand, the fluorescent light was situated in the back of the booth and hence was in the spraying area. The booth was in violation of § 1910.107(b)(10) because the glass panel was cracked and not protected so as to make breakage unlikely.

Because we conclude that the Commission applied valid regulations correctly to factu-

7. 29 C.F.R. § 1910.94(c) is the Secretary's general spray finishing standard and is applicable to operations not within the scope of § 1910.-107. *See Westinghouse Electric,* [1979] OSHD (CCH) § 23,542 at 28,520–21 (Rev.Comm'n 1979), *vacated on other grounds,* 617 F.2d 497 (7th Cir. 1980).

8. NFPA No. 33–1969 provides:
   104. SPRAYING AREA. Any area in which dangerous quantities of flammable vapors or mists, or combustible residues, dusts or deposits are present due to the operation of spraying processes.
   A spraying area includes:
   (a) The interior of spray booths except as specifically provided in Section 1104.
   (b) The interior of ducts exhausting from spraying processes.
   (c) Any area in the direct path of spray or any area containing dangerous quantities of air-suspended powder or air-suspended combustible residue, dust, deposits, vapor or mists as a result of spraying operations.

al findings supported by substantial evidence, we affirm the Commission's order.

*Affirmed.*